1

2

3

4

5

6

7

8                                  UNITED STATES DISTRICT COURT

9                             FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DERIK NATHANIEL WALKER,                      No.  2:19-cv-0185 TLN AC P

12                     Plaintiff,

13          v.                                     FINDINGS AND RECOMMENDATIONS

14   E. ARNOLD, et al.,

15                     Defendants.

16

17          Plaintiff, a state prisoner proceeding pro se and in forma pauperis, has filed this civil

18   rights action seeking relief under 42 U.S.C. § 1983.  The matter was referred to a United States

19   Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

20          Plaintiff's second amended complaint ("SAC"), ECF No. 31, is now before the court for

21   screening.  This is the third complaint to have been screened in this case.  See ECF Nos. 1, 16

22   (original complaint and first screening); 20, 28 (first amended complaint and second screening);

23   31 (second amended complaint).  For the reasons stated below, the undersigned will recommend

24   that this action be dismissed for failure to state a claim upon which relief may be granted.

25          I.      STATUTORY SCREENING OF COMPLAINT

26          The court is required to screen complaints brought by prisoners seeking relief against a

27   governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

28   court must dismiss a complaint or portion thereof if the prisoner has raised claims that are

1   "frivolous, malicious, or fail[] to state a claim upon which relief may be granted," or that "seek[]

2   monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).  A

3   claim "is [legally] frivolous where it lacks an arguable basis either in law or in fact."  Neitzke v.

4   Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir.

5   1984).  "[A] judge may dismiss . . . claims which are 'based on indisputably meritless legal

6   theories' or whose 'factual contentions are clearly baseless.'"  Jackson v. Arizona, 885 F.2d 639,

7   640 (9th Cir. 1989) (quoting Neitzke, 490 U.S. at 327), superseded by statute on other grounds as

8   stated in Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).  The critical inquiry is whether a

9   constitutional claim, however inartfully pleaded, has an arguable legal and factual basis.

10  Franklin, 745 F.2d at 1227-28 (citations omitted).

11       "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the

12  claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of

13  what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550

14  U.S. 544, 555 (2007) (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

15  "Failure to state a claim under § 1915A incorporates the familiar standard applied in the context

16  of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)."  Wilhelm v. Rotman,

17  680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted).  In order to survive dismissal for failure

18  to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a

19  cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the

20  speculative level."  Twombly, 550 U.S. at 555 (citations omitted).  "'[T]he pleading must contain

21  something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally

22  cognizable right of action.'"  Id. (alteration in original) (quoting 5 Charles Alan Wright & Arthur

23  R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004)).

24       "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

25  relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting

26  Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual

27  content that allows the court to draw the reasonable inference that the defendant is liable for the

28  misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556).  In reviewing a complaint under this

2

1  standard, the court must accept as true the allegations of the complaint in question, <u>Hosp. Bldg.</u>

2  <u>Co. v. Trs. of the Rex Hosp.</u>, 425 U.S. 738, 740 (1976) (citation omitted), as well as construe the

3  pleading in the light most favorable to the plaintiff and resolve all doubts in the plaintiff's favor,

4  <u>Jenkins v. McKeithen</u>, 395 U.S. 411, 421 (1969) (citations omitted).

5          II.    <u>SECOND AMENDED COMPLAINT</u>

6       The SAC names four individuals as defendants, all of whom are (or were) employed at

7  California State Prison – Solano ("CSP-Solano"): Correctional Officers K. Fox and J. Nixon,

8  Correctional Lieutenant J. Lee, and Warden E. Arnold.  ECF No. 31 at 2-3.  Plaintiff also brings a

9  claim against the Solano County Sheriff's Department.  <u>Id.</u> at 16.  All claims arise from prison

10  disciplinary actions, and an ensuing criminal prosecution, that followed the discovery of

11  controlled substances in the prison laundry facility where plaintiff worked.

12          III.   <u>DISCUSSION</u>

13       The SAC presents five claims, addressed in turn below, each of which is stated against a

14  different defendant and each of which asserts multiple constitutional violations.  For the

15  following reasons, none of allegations of the operative complaint support claims upon which

16  relief may be granted.  Accordingly, the complaint should be dismissed.

17          A.  <u>Claim One: Defendant Fox</u>

18            1.  <u>Allegations</u>

19       In Claim One, plaintiff alleges that he was working in the prison laundry and noticed

20  suspicious objects inside a mop-head coming down a conveyor belt.  He took no action.  Officer

21  Fox then seized plaintiff, put him in metal restraints, and placed him in a 2x2x7-foot cage.

22  Plaintiff was briefly taken to Fox's office and interrogated.  When plaintiff refused to "snitch,"

23  Fox returned him to the cage.  Plaintiff remained in the cage for almost 6 hours, without lunch or

24  access to a bathroom.  ECF No. 31 at 5-6.  Plaintiff asserts that he was placed in the cage in

25  retaliation for his refusal to snitch, and that his placement in the cage violated the Eighth

26  Amendment.  He also alleges that Fox submitted false evidence in the form of a rules violation

27  report, which resulted in his administrative segregation, guilt finding and attendant credit loss,

28  and wrongful referral for prosecution.  <u>Id.</u> at 4.

1                         2.  <u>Retaliation</u>

2              To state a claim for retaliation in violation of the First Amendment, an incarcerated

3      plaintiff must allege facts establishing the following five elements: (1) adverse action against the

4      inmate by a state actor (2) because of (3) that prisoner's protected conduct, and that such action

5      (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not

6      reasonably advance a legitimate correctional goal.  <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567-68

7      (9th Cir. 2005).  The Ninth Circuit has held in analogous contexts that there is no constitutionally

8      protected right not to "snitch."  <u>Paguio v. Acosta</u>, 114 F.3d 928, 930 (9th Cir. 1997) (rejecting

9      vindictive prosecution claim because refusal to snitch not protected conduct); <u>United States v.</u>

10     <u>Gardner</u>, 611 F.2d 770, 773 (9th Cir. 1980) (same).  Accordingly, numerous district courts have

11     found that refusal to snitch cannot constitute protected conduct for purposes of an inmate's First

12     Amendment retaliation claim.  <u>See</u> <u>Milliken v. Sturdevant</u>, No. 18-CV-05326-LHK, 2020 U.S.

13     Dist. LEXIS 86062 at *24-26, 2020 WL 2512381 at *9 (N.D. Cal. May 15, 2020), <u>appeal</u>

14     <u>dismissed</u>, No. 20-16192, 2020 U.S. App. LEXIS 39715, 2020 WL 7383656 (9th Cir. Dec. 1,

15     2020).[1]  Because there is no Ninth Circuit authority for the proposition that refusing to inform is

16     conduct protected by the First Amendment, the undersigned agrees that adverse action in

17     response to such refusal cannot support a retaliation claim.  Plaintiff therefore fails to state a

18     claim as a matter of law.

19                         2.  <u>Conditions of Temporary Confinement in Cage</u>

20             Conditions of confinement violate the Eighth Amendment only when two requirements

21     are met.  "First, the deprivation alleged must be, objectively, sufficiently serious… a prison

---

22     [1]  <u>See also</u>, <u>e.g.</u>, <u>Johnson v. Suleyman</u>, 2022 U.S. Dist. LEXIS 218777 at *16-17 (C.D. Cal. Oct.

23     25, 2022) (no retaliation claim where plaintiff alleged refusal to snitch was protected conduct);
       <u>Garland v. Redding</u>, 2016 U.S. Dist. LEXIS 40591, 2016 WL 1222202, at *4 (N.D. Cal. Mar. 28,

24     2016) (finding plaintiff failed to show how his refusal to debrief is protected conduct); <u>Simpson</u>
       <u>v. Feltsen</u>, 2010 U.S. Dist. LEXIS 46323, 2010 WL 1444487, at *3 (E.D. Cal. Apr. 9, 2010)

25     (failure to disclose source of drugs where "not protected conduct under the First Amendment");
       <u>Dixon v. Gonzales</u>, 2009 U.S. Dist. LEXIS 102893, 2009 WL 3416005, at *3 n.1 (E.D. Cal. Oct.

26     21, 2009) (finding plaintiff failed to state a claim for retaliation based upon a right not to speak
       (or not to "snitch") because "[c]hoosing not to disclose information about possible safety and

27     security concerns is not protected conduct"), findings and recommendations adopted by 2009
       U.S. Dist. LEXIS 118429, 2009 WL 5125612 (E.D. Cal. Dec. 21, 2009).

28
                                              4

1  official's act or omission must result in the denial of the minimal civilized measure of life's

2  necessities." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (internal quotation marks and

3  citations omitted).  Second, the prison official must subjectively "have a sufficiently culpable

4  state of mind . . . one of deliberate indifference to inmate health or safety." Id. (internal quotation

5  marks and citations omitted).  "What is necessary to show sufficient harm for purposes of the

6  Cruel and Unusual Punishment Clause depends upon the claim at issue." Hudson v. McMillian,

7  503 U.S. 1, 8 (1992).  "[E]xtreme deprivations are required to make out a[n] [Eighth Amendment]

8  conditions-of-confinement claim." Id. at 9.

9       One missed lunch, 6 hours without a bathroom, and temporary confinement in a very

10  small space do not rise to the level of an Eighth Amendment violation either singly or in

11  combination.  See Anderson v. County of Kern, 45 F.3d 1310, 1313-15 (9th Cir. 1995) (overnight

12  confinement in unsanitary conditions, shackled to waste-encrusted toilet grate, did not state claim

13  under Eighth Amendment because temporary); LeMaire v. Maass, 12 F.3d 1444, 1456 (9th Cir.

14  1993) (temporary denial of regular meals "falls short of the deprivation necessary to form the

15  basis of an Eighth Amendment violation"); Owens v. Padilla, No. C-06-4778, 2008 WL 3916068,

16  at *4 (N.D. Cal. Aug. 22, 2008) (six-hour confinement in prison barbershop without access to

17  bathroom did not state Eighth Amendment claim).  The conditions alleged here were undoubtedly

18  unpleasant, and the court does not suggest they were appropriate.  However, especially in the

19  context of an immediate response to a potential prison security issue, such temporary deprivations

20  are not unconstitutional.  See Sandin v. Conner, 515 U.S. 472, 482 (1995) ("federal courts ought

21  to afford appropriate deference and flexibility to state officials trying to manage a volatile

22  environment").  Because plaintiff's allegations establish neither a sufficiently grave deprivation

23  nor deliberate indifference to plaintiff's health or safety on defendant Fox's part, the claim fails.

24           3.  False Rules Violation Report

25       Plaintiff cannot base a claim for relief under Section 1983 on the allegation that Fox filed

26  a false report or falsified evidence.  Although wrong, such conduct is not unconstitutional and

27  therefore cannot support a cognizable claim.  See Hines v. Gomez, 108 F.3d 265, 268 (9th Cir.

28  1997) ("[T]here are no procedural safeguards protecting a prisoner from false retaliatory

accusations."); accord, Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989); Freeman v. Rideout, 808 F.2d 949, 951 (2nd Cir. 1986).

### B. Claim Two: Defendant Nixon

#### 1. Allegations

Plaintiff alleges that after he was detained by Officer Fox in relation to the contraband investigation, Officer Nixon conducted a strip search in violation of plaintiff's Fourth Amendment rights and then placed him in the Security Housing Unit ("SHU") in violation of his Eighth Amendment rights. Plaintiff did not consent to the search, which included visual body cavity inspection. He also did not consent to SHU confinement. ECF No. 31 at 6-8.

#### 2. The Strip Search

Neither strip searches nor routine visual body cavity searches violate the Fourth Amendment rights of prisoners. Bell v. Wolfish, 441 U.S. 520, 558 (1979); Thompson v. Souza, 111 F.3d 694, 700 (9th Cir. 1977); Michenfelder v. Sumner, 860 F.2d 328, 332-33 (9th Cir. 1988).

Strip searches that are "excessive, vindictive, harassing, or unrelated to any legitimate penological interest," however, may be unconstitutional. Michenfelder, 860 F.2d at 332. Lack of consent does not render a strip search excessive, vindictive, harassing or devoid of penological purpose. The circumstances alleged in the complaint—investigation of contraband discovered in plaintiff's workplace—preclude any plausible allegation that the search was unrelated to a legitimate penological interest. To the contrary, prison officials have a duty to maintain safety and internal order, and they are given broad discretion to do so. Bell, 441 U.S. at 547; Lucero v. Russell, 741 F.2d 1129 (9th Cir. 1984). Nothing in plaintiff's allegations supports an inference that the search exceeded the bounds of constitutionally permissible strip searches and body cavity inspections.

#### 3. The SHU Placement

Plaintiff's subsequent SHU placement was also related to the contraband incident and therefore had a clear penological purpose. Claim Two fails to identify any act of Officer Nixon that violated plaintiff's rights. Assuming that plaintiff intends to base this claim for relief on a theory that he was denied due process, the Constitution does not require a hearing or other review

of the evidence supporting segregation *prior* to a prisoner's placement in administrative or other

segregation pending investigation.  Hewitt v. Helms, 459 U.S. 460, 476 (1983), abrogated in part

on other grounds by Sandin v. Connor, 515 U.S. 472 (1995).  Moreover, SHU placement itself

does not violate the Eighth Amendment because its conditions are among those contemplated by

the inmate's sentence served.  See Resnick v. Hayes, 213 F.3d 443 (9th Cir. 2000) (disciplinary

segregation); May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997 (administrative segregation).

Accordingly, plaintiff fails to state any claim against Officer Nixon.

### C.  Claim Three: Defendant Lee

#### 1.  Allegations

Lt. Lee was the Senior Hearing Officer who conducted the disciplinary hearing that

followed the contraband incident.  The SAC alleges that Lee acted "arbitrarily and capriciously"

by denying plaintiff's request to have a witness at the hearing and by imposing a 180-day SHU

term "based upon evidence he knew or should have known was false."  ECF No. 31 at 8.  Plaintiff

contends that the denial of the witness, the finding that he had participated in the introduction of

contraband, and the SHU term violated his due process and Eighth Amendment rights.  Id. at 8-

10.

#### 2.  Denial of Witness

Inmates have a constitutionally protected right not to be punished for misconduct without

due process, though the process due in prison disciplinary proceedings is limited.  In Wolff v.

McDonnell, the Supreme Court established the following requirements: (1) advance, written

notice of the violation; (2) at least 24 hours to prepare for a committee appearance; (3) a written

statement of fact-finding; (4) the right to present witnesses and evidence where it would not be

unduly hazardous to institutional safety; (5) an impartial decision-maker; and (6) assistance if

inmate is illiterate or if issues are complex.  418 U.S. 539, 564-70 (1974).  Prison officials

maintain the necessary discretion to keep a hearing within reasonable limits and to refuse to call

witnesses that may create a risk of reprisal or undermine authority.  Id. at 566.

Plaintiff states that the reason defendant Lee denied his request to have a particular

witness at his hearing was because "witnesses [were] not allowed in the SHU."  ECF No. 31 at 9.

A witness exclusion decision based on security concerns cannot support a due process claim under <u>Wolff</u>.  Plaintiff's conclusory allegation that the decision was "arbitrary and capricious" cannot overcome this problem.  Neither can the allegation that state law was violated, ECF No. 31 at 9, because California statutes do not define the contours of federal constitutional rights.

At the hearing, plaintiff was able to view and respond to a video recording of the laundry room contraband incident, and was permitted to present a favorable written statement from another inmate.  <u>Id.</u> at 9-10.  The attachments to the complaint, <u>id.</u> at 25-50, reflect that the minimal due process requirements of <u>Wolff</u> were satisfied.  Accordingly, the SAC fails to state a claim based on the conduct of the hearing.

3.   <u>Guilt Finding</u>

To the extent that plaintiff challenges the finding that he committed the charged misconduct, his claim fails as a matter of law because the Constitution requires only that the disciplinary finding be based on "some evidence."  <u>See</u> <u>Superintendent v. Hill</u>, 472 U.S. 445, 454 (1985).  The record reflects the hearing officer's reliance on Officer Fox's report, which in turn relied on confidential information.  This indisputably constitutes "some evidence," though plaintiff has disputed the accuracy of that evidence since the incident.  Because the falsification of evidence does not support a constitutional violation, as explained above, plaintiff's theory as to the invalidity of the guilt finding necessarily fails.

4.   <u>SHU Term Imposed</u>

Plaintiff cannot state a constitutional claim based on his placement in segregation because due process is only implicated by restraint which imposes atypical and significant hardship on a prisoner in relation to the ordinary incidents of prison life.  <u>See</u> <u>Sandin</u>, 515 U.S. at 483-84.  Disciplinary segregation does not meet this standard.  <u>Resnick v. Hayes</u>, 213 F.3d 443 (9th Cir. 2000).

D.  <u>Claim Four:  Defendant Arnold</u>

1.   <u>Allegations</u>

Claim Four alleges that Warden Arnold violated plaintiff's rights in four ways: (1) having plaintiff summarily placed in the SHU based on false evidence; (2) targeting plaintiff and other

8

Black laundry workers for discriminatory treatment in relation to the contraband incident, in violation of equal protection; (3) false arrest; and (4) malicious prosecution. ECF No. 31 at 10-11. In support of these claims, plaintiff provides details of the criminal case that was brought against him in Solano County Superior Court arising from the prison contraband incident. Id. at 11-16. The SAC alleges that plaintiff spent more than a year being shuttled between the CSP-Solano SHU and the Solano County Jail. The charges against him were eventually dismissed after Officer Fox was impeached at a pretrial hearing with the incident videotape, which showed plaintiff standing at his work position and taking no action to cover up the contraband, contrary to Fox's testimony. Id. at 14. Plaintiff alleges in conclusory terms that Warden Arnold had known all along that Fox's report was false. Id. at 15.

### 2.   SHU Placement

For the reasons already explained, neither plaintiff's pre-hearing SHU placement nor the imposition of a SHU term following the rules violation hearing can support a viable constitutional claim. The same analysis applies to plaintiff's time in SHU during the course of his Solano County prosecution. Moreover, as to Warden Arnold, neither the factual allegations of the complaint nor the attachments indicate that Arnold personally caused the SHU placement.[2] Without personal involvement, there can be no liability under Section 1983. See Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011); Taylor v List, 880 F.2d 1040, 1045 (9th Cir. 1989).

### 3.   Racial Discrimination

The Equal Protection Clause broadly requires the government to treat similarly situated people equally. Hartman v. California Dep't of Corr. and Rehabilitation, 707 F.3d 1114, 1123 (9th Cir. 2013). To state an equal protection claim, a plaintiff must allege that defendant acted with an intent or purpose to discriminate against him based upon plaintiff's membership in a protected class such as a particular racial group. Furnace v. Sullivan, 705 F.3d 1021, 1030 (9th Cir. 2013). Plaintiff must plead specific facts that demonstrate unlawful discrimination or support

---

[2]  The attachments to the SAC reflect that Warden Arnold denied plaintiff's inmate appeal of the matter at the Second Level. ECF No. 31 at 45. This performance of a review function does not establish liability for the underlying action.

1  an inference of discriminatory intent.  Byrd v. Maricopa Cnty. Sheriff's Dep't, 565 F.3d 1205,

2  1212 (9th Cir. 2009).

3         Plaintiff's allegations of racial discrimination are entirely conclusory.  To the extent that

4  there was a racial disparity among those prisoners charged internally with disciplinary infractions

5  and referred externally for prosecution, the complaint is devoid of allegations that would support

6  an inference of intentional racial discrimination.  The complaint is also devoid of allegations that

7  would establish Warden Arnold's involvement in the decisions regarding which inmates should

8  face disciplinary charges and which should be referred for prosecution.  There is no basis for an

9  inference that Warden Arnold's involvement, if any, was influenced by racial considerations.

10                      4.       False Arrest and Malicious Prosecution

11        Plaintiff seeks to hold Warden Arnold responsible for his arrest and prosecution on

12  criminal charges, but nothing in the complaint establishes Arnold's involvement in those

13  decisions.  Any such allegations would not be plausible, because prison officials lack the

14  authority to initiate criminal prosecutions.  Even if Arnold had personally authorized the referral

15  of plaintiff's case to local law enforcement for consideration of prosecution, that would not

16  support liability for the decisions subsequently made by Solano County officials to arrest, charge,

17  and prosecute.  Being a link in the chain of events does not support the causation that Section

18  1983 requires.  See Townes v. City of New York, 176 F.3d 138 (2d Cir. 1999) (officers who

19  conducted illegal search cannot be liable under § 1983 for the ensuing wrongful conviction and

20  incarceration, because intervening acts of the prosecutor and judge defeat proximate causation).[3]

21              E.  Claim Five: Solano County Sheriff's Department

22                      1.       Allegations

23        The SAC alleges in Claim Five that the Solano County Sheriff's Department is liable for

24  plaintiff's false arrest/false imprisonment during the course of the criminal case against him, and

25  _____

26  [3]  A malicious prosecution claim against a proper Solano County defendant would also fail.  Such
    a claim requires facts showing that defendant(s) prosecuted plaintiff with malice, without

27  probable cause, and for the purpose of denying him equal protection or another specific
    constitutional right.  Freeman v. City of Santa Ana, 68 F.3d 1180, 1189 (9th Cir. 1995).  No such

28  allegations are present, or plausible, in this case.

                                          10

1  for malicious prosecution.  ECF No. 31 at 16-17.  The factual basis of the claim is substantially

2  identical to that of Claim Four.  See id. at 17-20.

3                                 2.  Municipal Liability

4       A suit against the Solano County Sheriff's Department is properly construed as a suit

5  against Solano County.  See Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) (citing Monell v.

6  New York City Dept. of Social Services, 436 U.S. 658, 690, n.55 (1978)).  Local governmental

7  entities may be liable under Section 1983 for civil rights violations.  See e.g. Karim-Panahi v. Los

8  Angeles Police Dept., 839 F.2d 621, 624 n.2.  However, the Supreme Court has limited municipal

9  liability to the unconstitutional implementation or execution of a municipal "policy statement,

10  ordinance, regulation, or decision officially adopted and promulgated by that body's officers."

11  Monell, 436 U.S. at 690.  The SAC does not allege that plaintiff's arrest, detention or prosecution

12  reflected a specific county policy or procedure, or the violation of a policy or procedure.

13  Accordingly, there is no basis for liability on the part of the County or its Sheriff's Department.[4]

14                        F.  Further Leave to Amend is Not Warranted

15       Leave to amend should be granted if it appears possible that the defects in the complaint

16  could be corrected, especially if a plaintiff is pro se.  Lopez v. Smith, 203 F.3d 1122, 1130-31

17  (9th Cir. 2000) (en banc).  If after careful consideration, however, it is clear that a complaint

18  cannot be cured by amendment, the court may dismiss without leave to amend.  Cato v. United

19  States, 70 F.3d 1103, 1105-06 (9th Cir. 1995).  Leave to amend may be denied where amendment

20  is futile or there has been a repeated failure to cure deficiencies.  Foman v. Davis, 371 U.S. 178,

21  182 (1962).  Here, plaintiff has already amended twice and the factual basis for his putative

22  claims is clear.  It is equally clear that the events described in the Second Amended Complaint do

23  not establish a constitutional violation.  Further leave to amend therefore should be denied as

24  futile.

25  ////

26  ////

27   
28  [4] In any event, the prison disciplinary findings established probable cause *even if* plaintiff was in fact innocent, defeating any claim of false arrest or imprisonment and of malicious prosecution.

IV.   PLAIN ENGLISH SUMMARY FOR PRO SE PLAINTIFF

The magistrate judge is recommending that your case be dismissed.  Even if you were innocent of the contraband charges, the wrongs you describe in the complaint did not violate your constitutional rights.  You will have an opportunity to object to this recommendation in writing before the district judge makes then final decision.

CONCLUSION

For the reasons set forth above, IT IS HEREBY RECOMMENDED that the complaint be DISMISSED with prejudice for failure to state a claim upon which relief may be granted.  See 28 U.S.C. § 1915A(b)(1).

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, plaintiff may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time waives the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: May 3, 2023

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE